Dear Mr. Brame:
As counsel to the Rapides Parish Assessor, you have requested an Attorney General's opinion regarding tax sales pursuant to Article VII, Section 25 of the Louisiana Constitution. You indicate that, effective October 31, 2006, Article I, Section 4 of the Louisiana Constitution was amended. While there were several amendments to Article I, Section 4, your question involves an amendment to Article I, Section 4(B)(1), which now provides:
 (B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity. (emphasis added).
You question whether, in light of this amendment (bolded portion), third party tax sales pursuant to Article VII, Section 25 continue to be legal, as you view such sales to be a taking of private property by the government that is then deeded to a private person or entity for that persons use and benefit.
For the reasons set forth below, it is the opinion of our office that the amendments to Article I, Section 4 have no effect on tax sales under Article VII, Section 25. Tax sales remain a valid enforcement method for the collection of taxes.
First, we note that the amendment to which you refer cannot be read by itself. Rather, the entire article must be read as a whole.[1]
Article I, Section 4(B) when read as a whole *Page 2 
clearly deals with expropriation.[2] The prohibitions in Article I, Section 4(B) only apply to the powers of eminent domain. In Angelle v.State, 212 La. 1069, (La. 1948), it was held that the constitutional provisions prohibiting the taking or damaging of private property, except for public purposes, refers exclusively to the power of eminent domain, that is, the intentional or purposeful expropriation or appropriation of private property for a public use or convenience. Tax sales conducted pursuant to Article VII, Section 25 do not involve the state or political subdivision exercising powers of eminent domain. The tax sale is to secure the payment of taxes, and in essence, falls under the state or political subdivisions taxing power. Further, in a tax sale, the property is being sold for the sole purpose of paying a tax debt, and therefore is not taken for either of the prohibited reasons set forth in Article I, Section 4 — for predominant use by a private person or entity, or for transfer to a private person or entity.
Our opinion and rational is consistent with that of the courts of several other jurisdictions, which is best illustrated by the court inIn re Murphy, 331 B.R. 107, *128 (Bkrtcy.S.D.N.Y., 2005):
 The Supreme Court held that "[t]he Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). A tax sale is not a taking for a public purpose because such sale is pursuant to the state's taxing power and not its power of eminent domain. Indus. Bank of Washington v. Sheve, 307 F.Supp. 98, 99 (D.D.C. 1969) ("A tax sale is not a government taking for which just compensation must be paid under the Constitution after judicial proceedings."); Golden v. Mercer Cty. Tax Claim Bureau (In re Golden), 190 B.R. 52, 57 (Bankr.W.D.Penn. 1995) ("In a tax sale context, the takings clause is not dispositive nor the appropriate basis for starting an inquiry."); Fitzgerald v. Neves., Inc., 15 Wash.App. 421, 428, 550 P.2d 52 (1976) ("We are hard pressed to find that the `taking' was for public use as opposed to the general purpose of enforcing payment of justly imposed taxes." (emphasis in original)); Richardson v. Brunner, 356 S.W.2d 252, 254
(Ky.Ct.App.), cert. denied, 371 U.S. 815, 83 S.Ct. 27, 9 L.Ed.2d 56 (1962) (holding under Kentucky's constitution that "[t]he sale is nothing more than a step in the foreclosure of a lien imposed under the *Page 3 
taxing power [and] is not a ground for holding the statute unconstitutional"); Sears v. Cottrell, 5 Mich. 251
(1858) (holding under Michigan's constitution, "That this act is not an infringement of that clause in the constitution which forbids the taking of private property for public use, is, I think, obvious, as that clause relates only to the taking and appropriation of property, as such, by right of eminent domain, and not to the taking of property in payment of taxes." (emphasis in original)). "The purpose of tax sales is not to strip the taxpayer of his property, but to insure the collection of taxes" and to "collect the fair share from those who have failed to meet their burden." Golden, 190 B.R. at 57.
While we do not look to decisions from other jurisdictions in interpreting our constitution, these cases demonstrate the general premise that tax sales are separate and distinct from takings and/or expropriations, and that prohibitions on the later are not applicable in the context of tax sales.
Trusting this adequately responds to your request, we remain
 Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: _________________________ KENNETH L. ROCHE, III Assistant Attorney General
 CCF, JR/KLR, III/crt
[1] Succession of Luaga, 624 So.2d 1156, 1165 (La. 1993)("[T]he constitution is subject to the same rules of interpretation as other laws"; Breaux v. City of Lake Charles, 338 So.2d 1205 (La.App. 3rd Cir. 1976)("It is a well established principal of statutory construction that the meaning of a particular word, clause, or sentence must be determined in light of the statute as a whole, each being construed with respect to and in light of all other provisions to the end that the whole be construed in harmony with the purposes and object therein announced.")
[2] Note that Article I, Section 4 was amended in response to the United States Supreme Court decision in Kelo v. City of New London, 545 U.S. 469,125 S.Ct. 2655, 162 L.Ed.2d 439 (2005) which involved an expropriation in the State of Connecticut.